1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Maria M. Gonzalez, et al.,           )     No. CV 06-1268-PHX-ROS
                                          )
10              Plaintiffs,               )     **OPINION AND ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    State of Arizona, et al.,             )
13                                        )
                Defendants.               )
14                                        )
    _____)
15

16

17         In the general election of 2004, Arizona voters approved Proposition 200.  That

18  initiative made significant changes to Arizona's voter registration scheme.  Plaintiffs

19  challenge some of those changes as contrary to federal law and ask the Court to issue a

20  temporary restraining order preventing Arizona officials from enforcing Proposition 200.

21  Plaintiffs have not shown there is a likelihood they will succeed on the merits.  Therefore,

22  their request will be denied.

23  **I. Background**

24         Congress enacted the National Voter Registration Act ("NVRA") in 1993.  42 U.S.C.

25  §§ 1973gg to 1973gg-10.  The statute was passed to accomplish four goals:

26                    (1) to establish procedures that will increase the number of
                      eligible citizens who register to vote in elections for Federal
27                    office;

28

1

        (2) to make it possible for Federal, State, and local governments to implement this subchapter in a manner that enhances the

2

        participation of eligible citizens as voters in elections for Federal office;

3

        (3) to protect the integrity of the electoral process; and

4

5

        (4) to ensure that accurate and current voter registration rolls are maintained.

6  42 U.S.C. § 1973gg(b)(1)-(4).  One of the methods Congress provided for achieving these

7  purposes was allowing individuals to register to vote by mail. 42 U.S.C. § 1973gg-2(2).  In

8  the portion of the statute devoted to mail registration, Congress stated "[e]ach state shall

9  accept and use the mail voter registration application form prescribed by the Federal Election

10  Commission pursuant" to the specific criteria for that form set forth elsewhere.[1]  42 U.S.C.

11  § 1973gg-4(a).   Congress allowed states to "develop and use" their own mail voter

12  registration forms, provided those forms also complied with certain criteria.  42 U.S.C. §

13  1973gg-4(a)(2). The criteria Congress envisioned for mail voter registration forms are set

14  forth in 42 U.S.C. § 1973gg-7(b).  That section provides, in relevant part:

15

        The mail voter registration form developed [by the Election Assistance Commission in conjunction with the States]–

16

17

        (1) may require only such identifying information (including

18

        the signature of the applicant) and other information (including data relating to previous registration by the

19

        applicant), as is necessary to enable the appropriate State

20

        election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election

21

        process . . . .

22

23

24

25

_____

26      [1]  The Federal Election Commission's responsibilities regarding the mail voter registration form were later transferred to the Election Assistance Commission. 42 U.S.C.

27  § 15532.

28

- 2 -

42 U.S.C. § 1973gg-7(b)(1).  Prior to 2004, Arizona accepted and used the federal mail voter registration form and did not require those wishing to register to provide any proof of citizenship.

Arizona voters passed Proposition 200 in 2004.  The initiative amended Arizona Revised Statutes section 16-166.[2]  That statute now reads, in part, "[t]he county recorder shall reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship."  Id.  The statute sets forth what qualifies as "satisfactory evidence of United States citizenship": "[t]he number of the applicant's driver license or nonoperating identification license, . . . [a] legible photocopy of the applicant's birth certificate, . . . [a] legible photocopy of . . . the applicant's United States passport, . . . [or] [a] presentation to the county recorder of the applicant's United States naturalization documents or the number of the certificate of naturalization."  Id.  Defendants claim that this law was precleared by the Department of Justice.  (Response p. 4)

On March 6, 2006, the Executive Director of the Election Assistance Commission ("EAC") sent a letter to the Arizona Secretary of State expressing the opinion that Proposition 200's requirement regarding proof of citizenship violated the NVRA. (Exhibit 5)  According to the letter, "[n]o state may condition acceptance of the Federal [Mail Voter Registration] Form upon receipt of additional proof. . . . Any Federal

---

[2] Proposition 200 made other changes to state law not relevant to the application for a temporary restraining order.

- 3 -

1 Registration Form that has been properly and completely filled-out by a qualified
2 applicant and timely received by an election official must be accepted in full satisfaction
3
4 of registration requirements." The Arizona Secretary of State responded to this letter and
5 requested an "opportunity to respond to the legal points raised by [the Executive
6 Director]." The Arizona Secretary of State also sent a letter to the Department of Justice
7 asking that the EAC be advised that requiring individuals to provide proof of citizenship
8
9 did not violate the NVRA.

10 On May 9, 2006, Plaintiffs filed their complaint setting forth ten causes of action.[3]
11 (Doc. 1) That same day Plaintiffs filed a request for a temporary restraining order
12
13 arguing that the NVRA preempted Proposition 200. Plaintiffs later sought more specific
14 relief in the form of "an immediate order restraining and enjoining Defendants . . . from
15 failing to distribute, use and accept the federal mail voter registration application form
16
17 prescribed by the U.S. Election Assistance Commission." (Doc. 13) Thus, the main issue
18 now before the Court is whether the NVRA's language regarding the federal mail voter
19 registration form preempts Proposition 200's requirement that individuals present proof of
20 citizenship at the time they attempt to register using the federal form.[4]
21
22 **II. Legal Standards**
23
24

25      [3] Another action was consolidated with the current suit on June 1, 2006. (Doc. 28)
26      [4] Plaintiffs explicitly state that the issue currently before the court is Arizona's refusal
27 to accept the *federal* form. (Doc. p. 1 n.1)
28                                             - 4 -

1   "The standard for issuing a temporary restraining order is identical to the standard

2   for issuing a preliminary injunction." Lockheed Missile & Space Co., Inc. v. Hughes

3

4   Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit has provided

5   two sets of criteria for a court to use when evaluating a request for a temporary restraining

6   order. First, "[u]nder the 'traditional' criteria, a plaintiff must show '(1) a strong

7   likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if

8

9   preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

10   advancement of the public interest (in certain cases).'" Earth Island Inst. v. United States

11   Forest Serv., 351 F.3d 1291, 1297 (9th Cir. 2003) (quoting Johnson v. Cal. State Bd. of

12

13   Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995)). Or second, a plaintiff must

14   "demonstrate[] 'either a combination of probable success on the merits and the possibility

15   of irreparable injury or that serious questions are raised and the balance of hardships tips

16

17   sharply in his favor.'" Id. (quoting Johnson, 72 F.3d at 1430). These two ways of

18   evaluating a plaintiff's request "represent 'extremes of a single continuum,' rather than two

19   separate tests." Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles,

20   340 F.3d 810, 813 (9th Cir. 2003) (quoting Walczak v. EPL Prolong, Inc., 198 F.3d 725,

21

22   731 (9th Cir. 1999)). "Thus, the greater the relative hardship to [Plaintiffs] the less

23   probability of success must be shown." Earth Island, 351 F.3d at 1298 (quoting Clear

24   Channel, 340 F.3d at 813). Of course, if Plaintiffs' claims fail as a matter of law, no

25   likelihood of success exists and the temporary restraining order cannot be issued. See

26

27   Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902,

28   - 5 -

1 913 (9th Cir. 1995) (affirming dissolution of preliminary injunction because claims failed

2 as a matter of law).

3

4 **II. Analysis**

5      "It is axiomatic that '[t]he starting point in every case involving construction of a

6 statute is the language itself.'" Landreth Timber Co. v. Landreth, 471 U.S. 681, 685

7
8 (1985) (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975)

9 (Powell, J., concurring)).  If the language of a statute is clear, a court "need not resort to

10 either the agency's interpretations or the statute's legislative history." Reynolds v.

11 Hartford Fin. Servs. Group, Inc., 435 F.3d 1081, 1092 (9th Cir. 2006).[5]  In fact, if "the
12
13 words of a statute are unambiguous . . . 'judicial inquiry is complete.'" Connecticut Nat.

14 Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S.

15 424, 430 (1981)).  Accordingly, Plaintiffs' resort to legislative history and agency action is
16
17 premature in that an ambiguity in the statute must first be established.[6]  The text of the

18 NVRA must be examined in detail to determine if an ambiguity exists.

19

20

21      [5] See also Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837,
22 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains
23 that Congress had an intention on the precise question at issue, that intention is the law and
must be given effect."); United States v. Gonzales, 520 U.S. 1, 6 (1997) ("Given the
24 straightforward statutory command, there is no reason to resort to legislative history.").

25      [6] Plaintiffs do not devote a great deal of argument to establishing that an ambiguity
26 exists.  Instead, Plaintiffs believe that the terms of the NVRA *clearly* prohibit Proposition
200 and refer to legislative history to get there.  But if the terms of the NVRA are clear, there
27 is no need to resort to agency decisions and legislative history.

28 - 6 -

As cited earlier, 42 U.S.C. § 1973gg-7(b), sets forth the requirements for the federal mail voter registration form. That statute details what the form *may* contain, what the form *must* contain, as well as what the form *must not* contain. The statute provides that the form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 42 U.S.C. § 1973gg-7(b)(1). The form must contain

a statement that–

(A) specifies each eligibility requirement (including citizenship);
(B) contains an attestation that the applicant meets each such requirement; and
(C) requires the signature of the applicant, under penalty of perjury.

42 U.S.C. § 1973gg(b)(2)(A)-(C). The form must also include statements setting forth the "penalties provided by law for submission of a false voter registration application" and that voter registration is confidential. 42 U.S.C. § 1973gg-7(b)(4). Finally, the form must not "include any requirement for notarization or other formal authentication." 42 U.S.C. § 1973gg-7(b)(3).

Plaintiffs submit that this statutory language sets forth *all* the requirements a state may require of an individual wishing to register to vote. In Plaintiffs' view, once an individual has fully and accurately completed the federal mail registration form, he or she should be registered to vote; the state may not condition registration on any additional requirements or actions not specifically set forth in the statute. Plaintiffs also contend

- 7 -

that the NVRA explicitly bars states from requiring any type of "formal authentication," which they interpret to include a requirement regarding proof of citizenship. The text of the statute does not support these conclusions.

### A. Statutory Construction of NVRA Requirements

Plaintiffs' first argument is that if an individual completes the federal form contemplated by the NVRA, Arizona must accept that form and register the person to vote. In other words, the federal form acts as a ceiling regarding the requirements to register to vote; any requirement not on the federal form violates the NVRA. Defendants counter that the NVRA actually acts as a floor, setting forth the requirements for completion of the federal form but leaving states free to impose additional requirements, so long as those requirements are not specifically barred by the NVRA. In other words, the full and accurate completion of the federal form does not assure an individual that they are registered to vote, additional information may be required. To resolve whether the NVRA requirements act as a ceiling or as a floor, the Court may look to the language of the NVRA addressing the contents of the federal form, "the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

To begin, there is no indication in the language of the NVRA itself that states are prohibited from requiring additional information, such as proof of citizenship, when processing voter registration forms. The NVRA provides that a voter registration form "may require only such identifying information (including the signature of the applicant)

- 8 -

1    and other information (including data relating to the previous registration by the

2    applicant), as is necessary to enable the appropriate State election official to assess the

3

4    eligibility of the applicant and to administer voter registration and other parts of the

5    election process."  42 U.S.C. § 1973gg-7(b)(1).  In Plaintiffs' view, the terms "identifying

6    information" and "other information" are not sufficiently broad to encompass a

7    requirement of proof of citizenship.  This does not square with the plain meaning of such
8
     terms.  The statute allows requiring "other information" meant to assist a state in
9

10   "assess[ing] the eligibility of the applicant" to vote.  The plain meaning is if the state

11   deems some information necessary to identify the applicant, the information can be
12
     required.  The state may require a signature, data relating to prior registration, and such
13

14   other information that will enable the state to determine eligibility and to administer the

15   registration and election process.  Therefore, in the identification process the state is
16
     allowed to determine eligibility.  Determining whether an individual is a United States
17

18   citizen is of paramount importance when determining his or her eligibility to vote.  In

19   fact, the NVRA repeatedly mentions that its purpose and goal is to increase registration of

20   "eligible citizens."  42 U.S.C. § 1973gg(b)(1)-(2).  Providing proof of citizenship
21
     undoubtedly assists Arizona in assessing the eligibility of applicants.  Arizona's proof of
22

23   citizenship requirement does not conflict with the plain language of the NVRA.[7]

24

25          [7] The portion of the NVRA both parties refer to controls the contents of the federal
26   form. 42 U.S.C. § 1973gg-7(b). Arguably, Proposition 200 does not change the contents of
     the form so 1973gg-7(b) does not apply. But changing what an individual must submit *in
27   addition* to the federal form is at least within the spirit of the NVRA if not the letter.

28                                                - 9 -

1    Further support for Defendants' position that the NVRA does not set out *all* of the
2
3    requirements for registering to vote is that the NVRA recognizes that states may have to
4    reject some submitted forms. Congress provided that states must "send notice to each
5    applicant of the disposition of the application" to register to vote. 42 U.S.C. § 1973gg-
6
7    6(a)(2). There is no indication from the statute itself what basis a state may have for
8    rejecting an application, but such rejections are clearly contemplated. Arizona
9    immediately sends notice to individuals who attempt to register to vote but fail to include
10   information regarding their citizenship status. The possibility that a state will have to
11   reject some registration forms is contemplated by the NVRA and supports Defendants'
12
13   contention that completion of the federal form, simpliciter, may not be enough.

14   Another informative aspect of the NVRA is that it provides specific guidance
15   regarding what *may not* be required: the federal form "may not include any requirement
16
17   for notarization or other formal authentication." 42 U.S.C. § 1973gg-7(b)(3). This is the
18   only specific prohibition mentioned. Plaintiffs read this restriction as applying to
19   Arizona's request for proof of citizenship. The plain language of this prohibition,
20   however, rules out this argument.
21
22   The meaning of a statutory word or phrase, such as "other formal authentication,"
23   can be determined "by the company it keeps (the doctrine of *noscitur a sociis* )."
24   Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 575 (1995). "[W]ords grouped in a list
25   should be given related meaning," thus, "other formal authentication" should be given a
26
27   meaning similar to that of "notarization." This interpretation is supported by resort to
28                                      - 10 -

1   definitions of the two terms.  See Note, Looking it Up: Dictionaries and Statutory

2   Interpretation, 107 Harv. L. Rev. 1437 (1994) (detailing Supreme Court's reliance on

3

4   dictionary definitions in statutory interpretation cases).

5       According to Black's Law Dictionary 1087 (8th ed. 2004), "notarize" means "to

6   attest to the authenticity of (a signature, mark, etc.)."  "Formal," on the other hand, is

7   defined as "[p]ertaining to or following established procedural rules, customs, and

8   practices. . . . Ceremonial, " id. at 678, and "authentication" is defined as "the act of

9

10  proving that something (as a document) is true or genuine."  Id. at 142.  Thus, "formal

11  authentication" refers to a requirement similar to notarization, such as requiring a

12  ceremonial act in which an individual attests to the truth of the registration form.  A bar

13

14  on notarization and formal authentication has no impact on a requirement that an

15  individual submit "other information" in any number of ways to prove citizenship.

16  Proposition 200's citizenship verification requirements are aimed at proving voter

17

18  eligibility, not at proving the registration form is "true or genuine."  Therefore, the bar on

19  "formal authentication" does not prevent an application of Proposition 200's

20  requirements.

21

22      Connected to the finding that the NVRA's bar on notarization or other formal

23  authentication does not apply to requiring proof of citizenship is the observation that

24  Congress did not specifically bar any other type of information being required for

25  registration.  As recognized in Key Tronic Corp. v. United States, 511 U.S. 809, 818-19

26

27  (1994), an omission may "suggest a deliberate decision" by Congress.  If Congress had

28                                                  - 11 -

1   wished to bar any requirement that individuals provide proof of citizenship when

2   registering to vote, it could have stated as much in the text of the statute. See H.J. Inc. v.
3
4   Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989) (noting that "rewriting [a statute] is

5   a job for Congress, if it is so inclined, and not for this Court."). Congress's choice to not

6   include a prohibition of proof of citizenship supports Defendants' argument that
7
8   Proposition 200 does not violate the NVRA.

9       Finally, a number of courts have found the NVRA does not act as a ceiling

10  preventing states from enforcing their own laws regarding voter qualifications. In

11  Association of Community Organizations for Reform Now (ACORN) v. Miller, 912 F.
12
13  Supp. 976, (W.D. Mich. 1995), the Court was asked to determine the constitutionality of

14  the NVRA. In finding that the NVRA did not "violate Congressional authority" under the

15  Constitution, the Court stated that "the NVRA does not regulate the qualifications of
16
17  voters." Id. at 986. The Court also noted that "[e]very court that has considered whether

18  the NVRA alters voter qualifications fixed by a state has found that it does not." Id. at

19  985. One of the cases cited for this proposition was ACORN v. Ridge, No. Civ. A. 94-

20  7671, 1995 WL 136913, at *8 (E.D. Pa. March 30, 1995). There the court observed that
21
22  the "NVRA does not establish who is entitled to vote. Instead, it establishes the method

23  which an *otherwise qualified voter* must follow to exercise his or her right to vote."[8] Id.

24

25      [8] Plaintiffs cite Ridge for the proposition that voter registration forms that request
26  "more information than permitted by the NVRA are contrary to the National Voter
    Registration Act of 1993." Ridge, 1995 WL 136913 at *9. But the forms at issue in that case
27  contained a requirement for notarization, a clear violation of the NVRA. Also, the Court

28                                        - 12 -

1  (emphasis added); see also ACORN v. Edgar, 56 F.3d 791, 794 (7th Cir. 1995) ("The

2
3  [NVRA] does not purport to alter the qualifications fixed by the State of Illinois for voters

4  in elections for the Illinois Assembly."). The Court finds these precedents persuasive.

5  There is no indication in the NVRA that Congress wished to supplant all state laws

6  regarding qualifications to vote. The NVRA was an attempt to provide uniformity to the

7
8  registration process, it was not an attempt to preclude all determinations of voter

9  qualifications by the states. Arizona's decision to require proof of citizenship is not

10  contrary to the plain language of the NVRA.

11  Because there is no ambiguity in the NVRA, the agency decisions and legislative

12
13  history are not to be consulted. Plaintiffs have not shown that the requirements of

14  Proposition 200 conflict with a plain language reading of the NVRA. Accordingly, there

15  is an insufficient likelihood of success on the merits regarding Plaintiffs' claim that

16
17  Arizona is not "accepting and using" the federal form. As a result, the request for a

18  temporary restraining order on this basis will be denied.

19  **B. Preclearance Pursuant to Section V of the Voting Rights Act**

20  Plaintiffs also believe they are entitled to a temporary restraining order based on

21
22  Defendants' failure to obtain preclearance of Proposition 200. The parties agree that the

23  Department of Justice precleared Proposition 200 in a letter dated January 24, 2005.

24

25  _____

26  provided no analysis of the issue of additional requirements such as the individual's "color,
   height, hair and eye color." Without such analysis, the holding of the court that additional
27  information is barred by the NVRA is not persuasive.

28                                         - 13 -

Plaintiffs believe, however, that "Defendants never revealed to the Justice Department that Arizona would cease to use and accept the federal mail voter registration form for federal elections." (Doc. p. 21)  A complete copy of Proposition 200 was attached to Arizona's submission to the Justice Department.  (Submission p. 1)  The submission also contained an "Analysis by Legislative Council" pointing out that Proposition 200 required "that evidence of United States citizenship be presented by *every person* to register to vote." (Submission p. 2) (Emphasis added.)  Thus, it appears likely that the state's submission adequately apprized the Justice Department of Proposition 200's changes to Arizona law.[9]  Plaintiffs have not shown a likelihood of success on the merits regarding preclearance and they are not entitled to a temporary restraining order based on this issue.

Accordingly,

**IT IS ORDERED** Plaintiffs' Application for Temporary Restraining Order (Doc. 13) is **DENIED**.

**IT IS FURTHER ORDERED** a Preliminary Injunction Hearing is set for July 19th, 2006 at 9 a.m. and July 20th, 2006 at 9 a.m.

**IT IS FURTHER ORDERED** Plaintiffs shall submit briefing on the preliminary injunction issues by June 30th, 2006.  Defendants shall file their Response by July 7th, 2006 and Plaintiffs' Reply is due July 14th, 2006.

---

[9] As recognized by some Plaintiffs, "preclearance . . relates only to compliance with Section 5 [of the Voting Rights Act], and has no bearing on compliance with other federal laws such as the NVRA." (Doc. p. 4 n.2)

- 14 -

1

2    DATED this 19 day of June, 2006.

3

4

5

6

7

8                                              Roslyn O. Silver

9                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      - 15 -